IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| Scott Peters, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 15 CV 7236 |
| vs. | ) |
| | ) Judge Philip G. Reinhard |
| Dr. Young Sun Kim, | ) |
| | ) |
| Defendants. | ) |

## ORDER

For the reasons set forth below, plaintiff's agreed motion to file amended citations to additional statement of facts [108] is granted, and defendant's motion for summary judgment [96] is granted. This case is terminated.

## STATEMENT-OPINION

On May 22, 2017, plaintiff, Scott Peters ("plaintiff"), filed a second amended complaint ("complaint") against defendant Dr. Young Sun Kim ("defendant"). Plaintiff's complaint seeks damages under 42 U.S.C. § 1983 against defendant for deliberate indifference to plaintiff's medical needs while incarcerated at the McHenry County Adult Detention Facility ("jail"). *See* [71]. On March 19, 2018, defendant filed a motion for summary judgment arguing plaintiff's suit must be dismissed because the facts reveal the conflict in this case is plaintiff's disagreement with defendant's professional medical judgment, not a deliberate indifference to plaintiff's medical needs [96]. The motion is fully briefed and before the court for review. For the following reasons, defendant's motion for summary judgment is granted.

### A. FACTUAL BACKGROUND

The court recounts the facts as presented by the parties to the extent they are relevant to the court's ruling on defendant's motion for summary judgment.[1]

---

[1] Plaintiff's agreed motion to file amended citations to additional statement of facts [108] is granted.

1

Plaintiff was detained at the jail from October 16, 2014 until June 25, 2015, pending his criminal trial which occurred from April 28, 2015 to April 30, 2015.[2] Defendant, as medical director of the jail during the time of plaintiff's incarceration, saw plaintiff as a patient nine times. Prior to his incarceration, plaintiff received treatment through the Veteran's Administration ("VA"), including pain medications (including an opiate) steroids, injections, back surgery and physical therapy, to treat degenerative conditions. Plaintiff maintains all attempts to cure him have failed. Prior to his incarceration, plaintiff saw a physical therapist three times in August of 2013, who determined plaintiff's prognosis poor due to the chronic nature of his condition, and was discharged from therapy after he stopped showing up. In July of 2014, plaintiff underwent a consult at the VA for umbilical hernia repair surgery. The surgery was recommended but not scheduled. Dr. Geoffrey Silver of the Edward Hines VA holds the opinion to a reasonable degree of medical certainty that the hernia repair surgery was elective.

Defendant first saw plaintiff at the jail on October 24, 2014. Plaintiff told defendant of his chronic pelvic, hip and back pain stemming from an injury years prior. Plaintiff was given a crutch to assist in ambulating, per his request. Defendant established a plan to monitor plaintiff under the jail hunger strike protocol (plaintiff was refusing food at this point), administered Extra Strength Tylenol and Cyclobenzaprine for pain, as well as ordered labs and a urinalysis. Plaintiff was also given a bottom bunk permit and bottom tier housing assignment, an extra mattress for chronic back pain, a permit for nutrition shakes, and was moved to a medical observation cell. Additionally, defendant wanted to review plaintiff's prior medical treatment records from the Hines VA to determine his prior diagnosis, tests he had undergone, and any treatments he had received. Following the advice of his attorney, plaintiff told defendant he would not sign the authorization for the records and that defendant should get the records from plaintiff's attorney. Defendant did not receive plaintiff's Hines VA medical records during plaintiff's stay at the jail. Defendant did not provide plaintiff with the same pain medication plaintiff had received through the VA.

Defendant next saw plaintiff on November 2, 2014 for chronic right hip and back pain. Plaintiff denied any recent injuries. Defendant's treatment plan included plaintiff's continued use of crutches and a low bunk. For pain, defendant provided plaintiff with Mobic, Tylenol, Cyclobenzaprine, and Neurontin.

On November 14, 2014, plaintiff was seen by covering doctor Wes Harmston. Plaintiff reported intermittent umbilical hernia discomfort. Dr. Harmston noted that plaintiff's hernia was

---

[2] Plaintiff avers in his complaint he was incarcerated at the jail until June 26, 2015, but does not dispute defendant's statement of fact that he was incarcerated at the jail until June 25, 2015.

under fair control and showed no signs of incarceration.[3] Dr. Harmston did not refer plaintiff out for a surgical consult for his hernia.

On November 17, 2014, defendant renewed plaintiff's prescription for Cyclobenzaprine. On November 25, 2014, defendant renewed plaintiff's prescription for Extra Strength Tylenol. Plaintiff was given a plastic chair to use in the day room and in his cell, and a shower chair.

Following a fall in the shower, plaintiff saw defendant on December 12, 2014. Plaintiff was agitated and angry during the visit, yelling and screaming while complaining of left knee and wrist pain. Defendant's examination of plaintiff was limited because plaintiff was uncooperative, telling defendant "Don't fucking touch me." Plaintiff had a small superficial abrasion on his left leg and had no signs of swelling in the wrist or knee. Defendant ordered an x-ray of plaintiff's left knee and wrist to rule out any fractures. Defendant also ordered bed rest, continued pain medication, a follow-up appointment after the x-ray results, and the use of a wheelchair. Plaintiff's Mobic prescription was also renewed. During this doctor visit, plaintiff called defendant a "quack," a "commie," said defendant should go back to North Korea, and called defendant's methods "archaic."

On December 15, 2014, x-rays were taken of plaintiff's left knee and left wrist. No acute injuries were noted by the reviewing radiologist. Plaintiff was not diagnosed with any injuries as a result of his fall in the shower, nor was he ever told he should have received treatment.

Defendant next saw plaintiff on December 19, 2014, where plaintiff was feeling better and was more cooperative. Defendant explained to plaintiff that the x-ray of his left wrist was normal and the x-ray of his left knee showed mild degenerative joint disease with small joint effusion, but was otherwise a benign study. Defendant's physical examination of plaintiff was unremarkable and defendant advised plaintiff to continue taking his pain medications. Plaintiff requested use of crutches at this visit which defendant encouraged, advising that it was good for plaintiff to walk instead of use the wheelchair. Plaintiff still had access to a wheelchair.

On December 28, 2014, defendant met with plaintiff. It had come to defendant's attention that plaintiff was using the wheelchair in the shower. Defendant instructed plaintiff to use the shower chair in the shower, not the wheelchair. At this same visit, defendant spoke with plaintiff about ways to avoid atrophy and showed plaintiff how to use the wheelchair as a walker. Plaintiff told defendant he was afraid and unable to use the wheelchair as a walker. Defendant also encouraged plaintiff to use his crutches or his cane. Plaintiff told defendant he had not yet been provided crutches (that defendant had ordered for him at a prior visit), so defendant made arrangements for plaintiff to get a pair of crutches that same day. Defendant also renewed plaintiff's prescriptions and explained to plaintiff the procedure to follow when his

---

[3] "If you aren't able to push the hernia in, the contents of the hernia can be trapped (incarcerated) in the abdominal wall. An incarcerated hernia can become strangulated, which cuts off the blood flow to the tissue that's trapped. A strangulated hernia can be life-threatening if it isn't treated." www.mayoclinic.org/diseases-conditions/inguinal-hernia/symptoms-causes/syc-20351547

prescriptions expire. Defendant attempted to explain to plaintiff the results of the x-rays that had been taken of his left knee and left wrist. Plaintiff was agitated and interrupted the defendant. At one point the correctional officer terminated the visit and wheeled plaintiff out of defendant's medical office.

Defendant next met with plaintiff on January 30, 2015, for complaints of ringing in the ears and blurry vision. Defendant was unable to get a good history from plaintiff due to plaintiff's failure to answer the questions appropriately and his argumentative behavior. When offered treatment, plaintiff refused and became more agitated and argumentative. The medical visit was terminated and defendant told plaintiff to return when he was more cooperative and willing to comply with treatment. When plaintiff returned to see defendant on February 20, 2015, the visit proceeded in the same way and was terminated due to plaintiff's non-compliance.

On March 8, 2015, plaintiff asked defendant to renew his Flexeril medication, prescribed to treat his chronic back pain and spasms. Defendant obliged and renewed his pain medications, including Cyclobenzaprine (generic for Flexeril). Additionally, defendant added Ultram for better pain control and Lactulose for constipation.

On March 27, 2015, defendant met with plaintiff to discuss his medications. Plaintiff reported to defendant that he was experiencing unpleasant side effects from his psychiatric medication. Defendant advised plaintiff to discuss this with his psychiatrist, the prescribing physician. (Plaintiff subsequently took defendant's advice and the medication was discontinued.) Defendant reviewed plaintiff's remaining medications, one by one. Defendant agreed to change plaintiff's Lactulose and Flomax prescriptions so that they were given as needed, as requested by plaintiff. Plaintiff wanted to continue his other medications for pain and constipation. Also during this medical visit, plaintiff explained to defendant he sustained multiple injuries while serving in the military in the 1980's, and more injuries later in life, causing him to suffer chronic pain and requiring him to use a cane and wheelchair to ambulate. He also told defendant he had been seen at the VA hospital where he received many treatments and was told pain medication was all they could do for him. During this medical visit, defendant's examination of plaintiff was limited due to plaintiff's lack of cooperation. To the degree defendant could exam plaintiff, plaintiff's abdomen was "soft nontender nondistended + bowel sounds," all stable findings. In defendant's neurological examination of plaintiff, plaintiff tested four out of five for his lower extremities, meaning he could stand up with resistence. However, defendant could not recall if plaintiff could stand on his own on that day. Defendant's overall assessment of plaintiff was chronic pain, hip and leg pain and possible drug side effects. Defendant encouraged plaintiff to use his cane and walker (as opposed to the wheelchair) to strengthen his lower extremities.

Plaintiff's wheelchair use inside the medical housing unit of the jail was discontinued by defendant on April 22, 2015. On that day, defendant testified during plaintiff's criminal trial (under subpoena and outside the presence of the jury) that it was his opinion plaintiff's use of the wheelchair was not medically necessary since he was not traveling a great distance inside the medical housing unit. Defendant also determined plaintiff was not making an effort to use the

crutches he had been issued to prevent atrophy. During his time in the medical housing unit, plaintiff ambulated to a chair five feet away from the door of his cell, and the shower, which was 12 feet away from his cell. His meals were brought to him. Plaintiff used his crutches (he was also given the opportunity to use a walker but he rejected that offer). Plaintiff was allowed use of the wheelchair whenever he was required to go to court. After hearing testimony from defendant, the state court judge ruled plaintiff could not sit in his wheelchair during the course of his trial.

During plaintiff's criminal trial, on April 29, 2015, plaintiff complained of a flare up of his hernia. Defendant was not working that day, but a jail nurse assisted plaintiff in reducing his hernia. The reduction was severely painful, but once reduced the pain subsided a great deal. Plaintiff was able to return to court and participate in his trial. Plaintiff was never diagnosed with a strangulated hernia while at the jail.

On May 1, 2015, defendant saw plaintiff for reported abdominal pain due to his hernia. Upon examination, defendant noted the hernia as soft and reducible. There was tenderness on palpitation, bowel sounds were present in all four quadrants, and there was no abdominal distension. Defendant instructed plaintiff on how to reduce the hernia and advised him to refrain from heavy lifting. Defendant also ordered an x-ray of plaintiff's abdomen to rule out an obstruction. Defendant also advised plaintiff to continue his medications. This was the last time defendant saw plaintiff. Four days later, a covering physician met with plaintiff to review his x-rays, which were negative for any acute problem. The physician noted that plaintiff's hernia was not incarcerated and was not tender on examination. Plaintiff reported the hernia was occasionally painful, yet reducible.

Defendant was scheduled to see plaintiff on June 19, 2015, but plaintiff refused to see him. Additionally, plaintiff refused to let defendant examine him on several occasions, according to plaintiff, due to defendant's rough handling of him, causing him pain. During the course of plaintiff's incarceration at the jail, defendant prescribed plaintiff various medications to see if they would help plaintiff feel better. Neurontin did help plaintiff.

Defendant holds the opinion to a reasonable degree of medical certainty that hernia repair surgery was not medical necessary for plaintiff during his stay at the jail. Defendant believes it was within the standard of care to clinically monitor the status of plaintiff's hernia because it was reducible and showed no signs of strangulation. Defendant also holds the opinion to a reasonable degree of medical certainty that because plaintiff's condition was chronic, physical therapy was not medically necessary. Defendant also believes a wheelchair was not medically necessary for plaintiff from April 22, 2015 to June 25, 2015. In order to prevent atrophy, it was appropriate for defendant to encourage plaintiff to use assistive devices, such as a cane, crutches, or walker to ambulate.

B.  **LEGAL STANDARD**

On summary judgment, the court construes all facts and draws all inferences in the light most favorable to the non-moving party. *Schepers v. Commissioner, Indiana Dept. of Corrections,* 691 F.3d 909, 913 (7th Cir. 2012). The court does not weigh evidence or determine the credibility of witness testimony. *O'Leary v. Accretive Health, Inc.,* 657 F.3d 625, 630 (7th Cir. 2011). Instead, the court only grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" supported by citations to materials in the record, including, among other things, depositions, documents, and affidavits. FED. R. CIV. P. 56(a). That said, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

C.  **ANALYSIS**

As noted above, plaintiff was pre-trial at the jail from October 16, 2014 until April 30, 2015. He was convicted on April 30, 2015, and sentenced on June 25, 2015. (Plaintiff apparently was transferred out of the jail on either June 25 or June 26, 2015.) Prior to the recent Seventh Circuit case of *Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018), courts uniformly extended Eighth Amendment jurisprudence to inmates in a pretrial setting. *Miranda*, however, in applying the holding in *Kingsley v. Hendrickson*, __U.S.__, 135 S.Ct. 2466 (2015), held that the *subjective* standard, previously required for a plaintiff to show defendant's unreasonable conduct, is not proper in a pretrial detainee's deliberate indifference matter. "'The language of the Eighth and Fourteenth Amendments differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted persons) cannot be punished at all, much less maliciously and sadistically.' We thus conclude, along with the Ninth and Second Circuits, that medical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject only to the objective unreasonableness inquiry identified in *Kingsley*." *Miranda*, 900 F.3d at 352 (citing *Kinglsey*, 135 S.Ct. at 2475). Following court-ordered briefing (after the fully briefed motion for summary judgment) on the *Miranda* decision, plaintiff argues all his claims arise under the Fourteenth Amendment because he was "pre-sentence" throughout his relevant time at the jail, and pre-sentence detainees are subject to the Fourteenth Amendment, citing *Lewis v. Downey*, 581 F.3d 467 (7th Cir. 2009) (plaintiff, found guilty but yet to be sentenced, was afforded protection under the Fourteenth Amendment since the Eighth Amendment is applicable to only those serving a sentence) and *McWilliams v. Cook County*, 2018 WL 3970145 (N.D. Ill. August 20, 2018) (Feinerman, J.) (plaintiff's conditions of confinement claims arose under the Fourteenth Amendment since he was a pre-sentence detainee

6

and not an inmate). In the light most favorable to plaintiff, the court will analyze his claims under the Fourteenth Amendment standard and under the guidance of *Miranda* regarding all of his contacts with defendant.

*Miranda* teaches the proper inquiry is two-step. "The first step, which focuses on the intentionality of the individual defendant's conduct, remains unchanged." *McCann v. Ogle County, Illinois*, __F.3d __, 2018 WL 6254472 at *3 (7th Cir. 2018). The question is "whether the medical defendant[] acted purposefully, knowingly, or perhaps even recklessly when [he] considered the consequences of [his] handling of [plaintiff's]" medical care. *Miranda*, 900 F.3d at 353. A showing of negligence or gross negligence will not be enough - plaintiff must prove "something akin to reckless disregard." *Id*. In the second step, aligned with *Kingsley*, plaintiff must demonstrate defendant's conduct was objectively unreasonable - not that defendant was subjectively aware that it was unreasonable. *Id*. at 352-54; *McCann*, 2018 WL 6254472 at * 3. In other words, plaintiff must show that defendant acted intentionally or recklessly - a more "exacting standard" than that required to prove negligence. *See Stidimire v. Watson*, 17-CV-1183-SMY-SCW, 2018 WL 4680666 at * 4 (S.D. Ill. Sept. 28, 2018) (Yandle, J.).

Defendant argues he is entitled to summary judgment as a matter of law because, regardless of which standard (objective or subjective) is applied, plaintiff's claims fail because defendant, in his care and treatment of plaintiff, did not violate plaintiff's constitutional rights. In his response to defendant's motion, plaintiff's brief focuses nearly exclusively on defendant's treatment of plaintiff's hernia, and defendant's order to remove a wheelchair from plaintiff's use.

Defendant saw plaintiff one time regarding his hernia. The undisputed facts show that on May 1, 2015, defendant examined plaintiff, noted his hernia to be soft and reducible, showed plaintiff how to reduce it, advised him to avoid heavy lifting, and ordered an x-ray of plaintiff's abdomen to rule out an obstruction. Construing these facts in the light most favorable to the plaintiff and analyzing plaintiff's claims under the Fourteenth Amendment, the court cannot say that defendant's actions were objectively unreasonable to plaintiff's medical needs as they pertained to his hernia. The court does not find that defendant failed to act with reasonable care, nor can the court find that defendant "intentionally disregarded" plaintiff's known medical condition or that defendant's response to plaintiff's medical need was "blatantly inappropriate," as noted by the court in *Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011). Relied upon by plaintiff, *Gonzalez* is distinguishable. In *Gonzalez*, plaintiff suffered from an inguinal (inner groin) hernia and complained to prison physicians over a period of two years while the pain worsened and became so debilitating that he could not perform daily activities. *Id*. *Gonzalez* is hardly analogous here where the facts fail to support a finding that plaintiff's hernia required surgery during his stay at the jail (as suggested by plaintiff). While plaintiff may have preferred surgery or a different course of treatment for his hernia, "the Constitution is not a medical code that mandates specific medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996).

7

In defendant's one medical visit with plaintiff regarding his hernia concerns, defendant's medical judgment was adequate and appropriate.

Next, defendant argues plaintiff's use of a wheelchair inside the jail from April 22, 2014 until June 25, 2015 was not required by the constitution in response to plaintiff's complaint that defendant's removal of the wheelchair for his use during that time caused him to endure extreme pain and hardship in moving about. Addressing the proper standard, plaintiff's claim is brought under the Fourteenth Amendment and subject to the objective unreasonableness inquiry.

The facts reveal plaintiff suffered a fall in December 2014 which triggered defendant to allow him use of a wheelchair inside the jail. As noted above, defendant testified before the trial judge on April 22, 2014 regarding plaintiff's need for a wheelchair based on his then-current medical condition. At that time, defendant testified a wheelchair was no longer medically necessary and plaintiff would be able to ambulate about the medical unit (where he was housed) with the use of crutches or a walker and could sit in a standard chair during the course of his criminal trial. Following this testimony, plaintiff was deprived of the use of the wheelchair during his remaining incarceration at the jail. The wheelchair was still available to plaintiff for long distances, including getting to court. Plaintiff argues he suffered extreme pain after he was forced to only use crutches (or a walker, which apparently he refused). Plaintiff also complains defendant violated his constitutional rights by failing to properly wean him off the wheelchair and by failing to prescribe physical therapy or other treatment to allow him to regain his strength.

Plaintiff cites to *Berry v. Peterman* in support of the argument that defendant cannot persist in an ineffective treatment without violating the constitution. 604 F.3d 435, 441 (7th Cir. 2010). The court finds plaintiff's claims fail even under the objective standard. There is no dispute that defendant took away plaintiff's use of the wheelchair to assist plaintiff in regaining strength and working toward avoiding the atrophy of his muscles. Defendant spoke with plaintiff (or at least tried) about the importance of walking and at some point showed plaintiff how to use the wheelchair as a walker. The court cannot say that defendant "acted purposefully, knowingly, or perhaps even recklessly" (*Miranda*, 900 F.3d at 353) when he considered the consequences of his decision to take away plaintiff's use of the wheelchair. Further, *Berry* does not offer plaintiff persuasive support. In *Berry*, the Seventh Circuit found that the jail doctor was not entitled to summary judgment based on the fact that the doctor refused to refer plaintiff to an outside doctor until plaintiff presented an emergency or an infection. *Berry*, 604 F.3d at 442. The court found plaintiff's delay in treatment "substantial" and "unnecessary." *Id*. Here, the facts show defendant was well aware of plaintiff's difficulties in walking and did not delay in providing an acceptable treatment. On the contrary, defendant attempted to work with plaintiff to help him improve his strength and walking abilities. While it is not surprising that plaintiff would disagree with defendant's course of treatment, it does not rise to the level of a constitutional violation under any standard. The record discloses plaintiff was a difficult patient at times and defendant's treatment of him met constitutional standards as set forth above.

8

Finally, while not addressed by plaintiff in his brief, the court does not find that any treatment or lack of treatment by defendant on behalf of plaintiff during his stay at the jail was in violation of plaintiff's constitutional rights. The court's review of the record, including the videotaped evidence of defendant's and plaintiff's interactions in the medical unit, show that defendant's care and conduct was proper and objectively reasonable.

The court thanks attorney William H. Hrabak for representing plaintiff as recruited counsel.

For the reasons stated above, defendant's motion for summary judgment [96] is granted.

Date: 12/06/2018                    ENTER:

_____
United States District Court Judge

Electronic Notices. (LC)